### FARRELL v. SECURITY MUT. LIFE INS. CO.

(Circuit Court of Appeals, Second Circuit. August 11, 1903.)

#### No. 167.

1. INSURANCE—APPLICATION—STATEMENTS—WARRANTIES.

Where an application for life insurance stipulated that the answers to the questions in the application should be warranties, and that, if the answers were untrue in any respect, the policy should be void, the insured warranted the literal truth of his answers, and a false statement purporting to be a complete answer to a question authorized the forfeiture of a policy issued on the faith thereof.

2. SAME—DUTY OF INSURED.

Where there was doubt as to the meaning of a question asked in an application for life insurance as to whether insured had been an "inmate" of a hospital, and the application provided that his answers should be treated as warranties, it was insured's duty to make a full, true, and complete statement of the facts, or to state that he did not know whether he had been such an inmate or not.

3. SAME—INMATE OF HOSPITAL.

Where insured stated that he had never been an "inmate" of a hospital in an application for life insurance providing that his answers should be treated as warranties, and his physician testified that prior to the application he had sent insured to a hospital simply to "get good bed and board," and that the physician could give him better care and under more satisfactory circumstances at the hospital than he could receive at another house, and that he made the entry of deceased's malady

---

¶ 1. See Insurance, vol. 28, Cent. Dig. §§ 560, 562, 565.

as rheumatism merely to qualify him to be entered at the hospital, such facts showed that insured had been an "inmate" of a hospital, and therefore constituted a breach of warranty.

In Error to the Circuit Court of the United States for the District of Connecticut.

This cause comes to this court upon a writ of error by plaintiff in the court below to review a judgment entered for defendant in the United States Circuit Court for the District of Connecticut upon a verdict rendered by direction of the court.

W. F. Kenney and Theo. M. Maltbie, for plaintiff in error.

F. W. Jenkins and Chas. E. Gross, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The plaintiff herein is the assignee of, and beneficiary designated under, a policy of insurance for $5,000 issued by defendant to William H. Taylor on October 21, 1899. The portions of the application for insurance signed by the insured which are material to the questions involved herein are as follows:

"I agree, that I will abstain from the habitual use of opium or other narcotics, and that this agreement, together with the answers and explanations given to the above various questions, inclusive of those propounded by the medical examiner, and the written and printed statements to him made, shall form the exclusive and only basis of the agreement between me and the Security Mutual Life Insurance Company. That each and every statement and answer made by me, as aforesaid, is material to the risk, and I warrant each and every of said statements and answers, whether written by my own hand or not, to be full, complete and true, and if any statement or answer made as aforesaid is not full and complete, or is untrue in any respect, then the Policy of Insurance issued hereon shall be null and void. That should I fail to pay any of the premiums on or before the day on which the same shall fall due, or fail to comply with any of the terms of this agreement, or of any Policy issued hereon, in that event said Policy shall become null and void, and all moneys which shall have been paid shall be forfeited to the said Company for its sole use and benefit. That the proofs of death required shall be made upon the blank forms furnished by the Company, and shall include all information required thereby. That all provisions of law forbidding any physician who has or shall have attended me from disclosing any and all information which he acquired by such attendance together with any such provisions affecting the uses which shall be made of this application or any part thereof, and all provisions of law in conflict with or varying the terms of this agreement and the policy applied for, are hereby expressly waived. That the Policy hereby applied for shall not be in force unless actually delivered to and accepted by me during my lifetime and while in good health, and the first premium due thereon actually received by said Company. No answer or statement made to, or information possessed by any agent, medical examiner or other person, shall be admissible in evidence against this Company, or binding upon it, unless actually written in this application over the signature of the applicant.

"Dated at Hartford, this 16th day of Oct., 1899.

"William H. Taylor."

"Part II.

"B. Give the name and residence of your medical adviser, or family physician. Ans. Dr. Miller, Jacksonville, Fla.

"C. How long since were you last attended by a physician, or consulted one? Ans. Not since childhood, if at all.

"D. For what difficulty or disease? Ans. None that he has any remembrance of. * * *

"3. Occupation and Environment.

"E. Have you ever changed residence or traveled on account of your health? Ans. No. * * *

"6. Health Record.

"Have you ever been affected with any of the following named diseases or conditions? (Answer 'Yes' or 'No' to each question.)

"Malaria. No. How many attacks. ——. Disorder of liver. No. Rheumatism. No. Gout. No. Syphilis. No. Disease of Brain or Spine. No. Severe Headache. No. Vertigo. No. Loss of Consciousness. No. Convulsions. No. Paralysis. No. Nervous Exhaustion. No. Apoplexy. No. Asthma. No. Spitting of Blood. No. Bronchitis. No. Chronic Hoarseness. No. Chronic Cough. No. Shortness of Breath. No. Fainting Spells. No. Pleurisy, or any chest or lung disease. No. Pain in Region of Heart. No. Dyspepsia or Indigestion. No. Chronic Diarrhea. No. Biliary Colic. No. Jaundice. No. Diabetes. No. Renal Colic. No. Gravel or Calculus. No. Immoderate flow of Urine. No. Difficult or tedious Urination. No. Sunstroke. No. Fistula, Anal. No. Bleeding Piles. No. Varicose Veins. No. Appendicitis. No. Palpitation of Heart. No. Dropsy. No. Swelling of Feet or Face. No. Swelling of Glands. No. Cancer or Tumor. No. Chronic Ulcer or Abscess. No. Discharges from the Ear. No. Difficulty in Swallowing. No. Yellow Fever. No.

"The date, duration and severity of each disease answered affirmatively must be fully described. (See Note III. Medical Report.) * * *

"7. Clinical History.

"(Detail in brief upon the following form, the clinical history of any affection experienced by the subject, as per his answers foregoing.)

"Never has had a physician to care for him that he remembered. * * *

"E. Have you ever been an inmate of any Infirmary, Sanitarium, Institution, Asylum or Hospital? Ans. No. * * *

"9. Habits.

"A. What is your practice as regards the use of spirits, wines, malt, liquors or other alcoholic beverage? (See Note IV. Medical Report.) Ans. Kind: Beer. Amount: About 4 glasses. How often: Per week. * * *

"I hereby declare: That I have reviewed and understand all of the above questions and answers thereto, and they are hereby made part of my application for insurance in the Security Mutual Life Insurance Company, and I hereby warrant said answers, and each of them, as written, to be full, complete and true; that I am the person described above and in part I of this application signed by me, and that each of the questions in Part I and II of my application was answered in writing before I signed the same. Also, that I am free from any and all diseases, sicknesses, ailments and complaints, except as above stated. That I will conform to and be governed by the existing By-Laws of the Company, and the same as they may be hereafter amended.

"Dated at Hartford, this 14th day of Oct., 1899.

"William H. Taylor."

On May 14, 1900, the insured died. The remote cause of death, as stated by his attending physician, was "phthisis pulmonalis, cough, expectoration, fever, pleuritic pains, cold perspiration, rapid respiration," etc.

This action was brought to recover said sum of $5,000 in the superior court for Hartford county, in the state of Connecticut, and was duly removed by defendant to the Circuit Court of the United States for the District of Connecticut. On the trial of the cause there was much evidence tending to show that several of the answers contained in the application were untrue, in that deceased had for years been in the habit of drinking various intoxicating beverages, had had malaria, had been crippled by rheumatism, had spent his winters in the south on account of his health, and that in 1895 he

was dangerously ill with double pneumonia, pleurisy, and bronchitis, and was then attended by a physician, and that subsequently he was attended at intervals during a period of four years by another physician. There was also uncontradicted evidence that in July, 1899, the deceased was admitted to a hospital, where he remained for from one to two weeks. At the close of the testimony, counsel for defendant requested the court to direct a verdict in its favor, on the ground that the statements in the application for the policy were warranties; that the testimony showed that certain of said statements, which were specifically called to the attention of the court, were false; and that, therefore, by the terms of said contract, said policy was null and void. The court, in its charge, declined to discuss the evidence as to the various grounds stated in said motion, but ruled that the statements in said application were warranties, and instructed the jury as follows:

"It is my opinion, after carefully considering the matter, that the evidence does show that Mr. Taylor was for some little time, just shortly prior to the issue of this policy, an inmate of the St. Francis' Hospital; and it seems to me, under my view of the law with reference to that matter, that it is my duty to instruct you to return your verdict for the defendant."

In the view which we take as to the correctness of the charge of the court on this ground, it is unnecessary to consider the other defenses, which, when analyzed, lead to the same conclusion. The exceptions challenge the rulings that the answers in said application were warranties, and that the evidence showed that deceased was an inmate of the hospital, and the direction of a verdict for defendant. That under such a contract of insurance the answers to the questions in the application are warranties, upon the literal truth of which the validity of the policy depends, was decided by this court in Brady v. United Life Insurance Association, 60 Fed. 727, 9 C. C. A. 252. And where, as in this case, the answer of the applicant purports to be a complete answer to the question, a policy issued on the faith of such application is avoided by any substantial misstatement or omission in said answer. But the burden of plaintiff's contention appears to be that the word "inmate" is equivocal or ambiguous, and that, therefore, the question whether deceased was an "inmate" of a hospital was a mixed question of law and fact, and should have been submitted to the jury in the light of the surrounding circumstances, in order that they might determine the intent of the parties and the construction to be put upon the contract in view thereof. The pertinent reply to this contention is that, if there was any doubt as to the meaning of this question, it was open to the insured either to leave it unanswered or to answer it by a "full, true, and complete" statement of the facts, or by a statement that he did not know whether he had been such an inmate or not. But, irrespective of this suggestion, an examination of the record dispels all uncertainty as to the falsity of the answer in any view of the meaning of the question. It appears from the testimony of the plaintiff himself that he took deceased to St. Francis' Hospital at the suggestion of a physician, and from the uncontradicted testimony of said physician, Dr. Sullivan, who was plaintiff's witness, that at the request of plaintiff he visited

deceased professionally, and suggested his removal to the hospital; that he went to the hospital, and examined deceased for 20 minutes to half an hour very carefully; that deceased was accepted at the hospital as his private patient, and was a patient at and inmate of the hospital during one or two weeks. It was proved that the hospital was a chartered institution, with wards and nurses, was under the charge of a physician, and was maintained by public contributions. The hospital record was produced and showed that deceased was admitted in the medical class, that his physician was the said Dr. Sullivan, that his disease was diagnosed as rheumatism, and that the charge for his treatment was $7, which was paid. The only evidence relied on to modify the conclusions necessarily drawn from the foregoing uncontradicted facts consists in the testimony of Dr. Sullivan. On his direct examination he stated as follows:

"Q. What was done with Mr. Taylor after your visit? A. I think, at my suggestion to Mr. Farrell— I told him that, under the conditions the Brower House was in, that it would improve his environments, and be much more comfortable and pleasantly situated, if he would go out to St. Francis' Hospital, with which I was allied. Q. You told him that you would give him more convenience, and he would be under better environment at the hospital than he would get in the Brower House? A. Yes. St. Francis' Hospital had not been opened long; there were but few patients there; and it would be quite inexpensive for him to stay there a short time."

He further testified on direct examination that he found nothing the matter with deceased, and that he made the entry of rheumatism in order to qualify the patient to be entered at the hospital. On cross-examination he testified that he ordered the removal of deceased to the hospital because "I could give him better care, and under more satisfactory circumstances, at St. Francis' Hospital, than he would receive at the Brower House." He explained that by better care he meant "better environment"—under better conditions— and that by "better conditions" he meant: "Well, if he touched a button, he could have a servant come to his room any time day or night; or if he wanted a change of blankets, or a hot drink—any want could be attended to at once," and that he sent deceased there "simply to put him where he could get good bed and board."

"Inmate" is defined as follows:

"One who lives in the same house or apartment with another; a fellow lodger; esp. one of the occupants of an asylum, hospital, or prison; by extension, one who occupies or lodges in any place or dwelling." Webster.

"One who is a mate or associate in the occupancy of a place; hence, an indweller; an associated lodger or inhabitant; as the inmate of a dwelling house, factory, hospital, or prison." Century.

There is nothing to show that the word "inmate" was used or understood in said application in any sense other than its ordinary sense as thus defined. The presumption therefore is against any different or technical use.

But, even if the question could be considered, as contended by plaintiff, as an inquiry whether plaintiff had been admitted to the hospital for medical treatment for disease, the uncontradicted evidence as to the circumstances under which the deceased was taken there under advice of a physician as his patient, and the character

of his occupancy, satisfies this requirement. And in view of the positive statements of the physician as to said facts the court would not have been justified in submitting the case to the jury on the theory of ambiguity or uncertainty because the witness said he sent deceased there simply "to get good bed and board." If this statement be not rejected as either palpably untrue or an unjustifiable conclusion of the witness, it must be so interpreted as to apply to the case of a patient who required the sort of treatment implied by better conditions, environment, and service. In the modern treatment of disease, especially of such a character as that from which the life insured died some eight months after he left said hospital, nothing further would have been necessarily helpful toward improvement even in the case of an inmate for a long period. Therefore there was not even a scintilla of evidence of ambiguity or contradiction to justify the court in submitting the case to the jury.

The cases cited by plaintiff on this point do not support his contention. In Chinnery v. Industrial Company, 15 App. Div. 515, 44 N. Y. Supp. 581, the inquiry was, "Has said life ever been under treatment in any hospital, asylum, or other institution?" The answer was "No." This does not appear to have been a warranty, but a representation, and the court held that the removal of a cinder from the eye of the insured at a hospital was not "being under treatment," within the meaning of the policy, at least so as to be material to her general health.

In Mutual Benefit Life Insurance Company v. Wise, 34 Md. 583, there was this inquiry and answer in the application: "Q. Has the party been, or is he now, employed in any military or naval service? A. No." The fact was that he had been a chaplain in the Confederate Army. The court held that it should have been left to the jury to determine whether a chaplain in the army is in the military service, and, if so, whether insured was ever employed in such service. The appellate court, therefore sustained the refusal of the court to charge that the jury should find for the defendant if it should find that Mr. Wise was a chaplain in the Confederate Army in the year 1862. But there was no evidence that a chaplain is or is not in the military service, and none to show that Mr. Wise was ever actually employed in said service.

The other cases cited by plaintiff merely state the general rule of construction in cases of ambiguity. But, as we have already seen, there was no uncertainty in the terms of this contract. The question and answer were direct, the facts were fully within the knowledge of deceased, and were positively and untruly stated by him.

The judgment is affirmed, with costs.