FARMERS AND TRADERS LIFE INSURANCE COMPANY, Plaintiff, *v.* HALLIE A. DALHEIM, Defendant.

Supreme Court, Albany County, September 26, 1940.

*D. Eaton Alvord* [*Morris Simon* and *Burton T. Kehoe* of counsel], for the plaintiff.

*Butler, Kilmer, Hoey & Butler* [*Clarence B. Kilmer* and *Charles L. Hoey* of counsel], for the defendant.

A. V. S. COCHRANE, Official Referee. The policy in question was issued by plaintiff January 27, 1938, on the life of Evelyn G. Dalheim, daughter of defendant, who was named as beneficiary in the policy in case of the death of her daughter.

When the policy was issued, a doctor representing the plaintiff made a careful physical examination of the assured, including her lungs, and he testified on this trial that he found no evidence of tuberculosis. That disease was subsequently first diagnosed in May, 1938, and caused her death April 29, 1939.

Cancellation of the policy is sought on the ground that the assured, in her application for the policy, falsely answered in the negative the following questions, viz., " Have you ever been an inmate of any hospital or sanitarium? " and " What physicians have you consulted during the past three years, and for what? "

The assured was a registered nurse in the employ of the Albany City Hospital. During the period of her employment she was examined at different times by medical members of the hospital staff, including X ray examinations. It also appears that for five days in February, 1937, she was confined in a room or ward of the hospital under the care of Dr. Ordway, a member of the hospital staff. He was a witness for the plaintiff and testified on cross-examination that " She had a cold and a sore throat." This was objected to on the ground that the evidence was privileged, but the witness had already testified on direct examination that " She had a very trivial sickness," and it appears that he had written his diagnosis in technical medical terms (clearly proved to mean, in ordinary language, a cold and sore throat) and made it part of the hospital records, and that on August 16, 1939, he had sent this diagnosis to the medical director of plaintiff in response to his request therefor. After all this it would seem that nothing remained of the question of privilege. In any event, there is no evidence that the assured, at any time during her hospital employment before the policy was issued, had any illness more serious than a cold or sore throat, except that she had an operation which she disclosed and is not here material. She had only the common ailments to which humanity in general is subject. It is true that an X ray examination showed a 2 plus positive reaction to tuberculosis, but the doctors also say that this is common in eighty per

cent of people reaching adult age and there is no evidence to the contrary.

Plaintiff was entitled to correct answers to its questions, but the question here is did those questions contemplate such a peculiar and unusual condition as here existed. All the nurses living in the hospital were subject to periodical examination including X ray examinations. Those examinations were routine in their nature and made in accordance with the rules and usage of the hospital. No examination of the assured was other than part of this routine. The question is, " What physicians have you consulted? " In no proper sense had she " consulted " any physician. The examinations were not at her solicitation or for her benefit, but were at the behest of her employer and for its information and benefit. If they can be called " consultations " they were " consultations " of the employer rather than of the servant. The policy of the hospital was not to allow its nurses afflicted with colds or other ills to come in contact with its patients or other nurses, and it was in pursuance of this policy that the nurses were examined. The assured certainly did not *consult* the doctors of the hospital staff in the sense in which we ordinarily understand that word as applied to a patient consulting a physician.

Nor do I think the assured was an " inmate " of the hospital, as we ordinarily understand that word as applied to a patient entering a hospital. She lived in the hospital. That was her home. Her confinement to a room or ward in the hospital had no more significance than if she had kept to her room for a cold in a private house. The evidence is that this was for the convenience of the hospital; that common treatment for a cold is to put the patient to bed; that there was no other place to put her where she would be properly segregated from others; and that it was common practice to put the nurses when ill in a room or ward, as was done in the case of the assured. One of the hospital doctors testified, " It is more convenient for us to take care of them in that fashion." The assured was not in the ward of her own volition. She was there at the command of her employer. If she had been afflicted with this cold and sore throat while living in a private residence, no doctor would have suggested a hospital. In no ordinary or proper sense can she be considered to have been an " inmate " of the hospital, as that word is usually applied to a patient going to a hospital.

It is necessary to discriminate between the assured on the one hand acting for herself and on her own volition and for her own benefit in being examined by the hospital doctors and going to the hospital ward, and, on the other hand, as representing her employer

and doing what she was required by it to do. It is only in the former sense that the assured could be considered an " inmate " of the hospital. In a broader sense, of course, all the nurses living in the hospital were " inmates " thereof.

To the assured what answers did the questions reasonably seem to call for? (See *Nowak* v. *Brotherhood of American Yeomen*, 249 N. Y. 78, 82.) How did she understand them? It seems to me quite clear that it did not occur to her that she was expected to reveal the conditions and environment which surrounded her and which were merely incidental to her life in the hospital in common with all the other nurses. It seems equally clear that the framer of the questions, when he framed them, did not have in mind such a situation. Among other things, the form of his question as to whether she had " ever been an inmate of any hospital " indicates that he did not, because, as above stated, that word may include all who live in the hospital as employees or otherwise. In my opinion these hospital examinations and confinement of the assured in a ward or room in the hospital, as above outlined, were not within the contemplation of the questions asked. At any rate, the assured had a right so to assume, and the questions were, for that reason, not improperly answered.

It follows that the complaint should be dismissed and the defendant have judgment on her counterclaim for the amount due on the policy, with costs.