**Joseph BAUR, Petitioner-Appellant,**

v.

**F. David MATHEWS, Secretary of HEW, Respondent-Appellee.**

No. 76–2688.

United States Court of Appeals, Ninth Circuit.

May 5, 1978.

Rehearing and Rehearing En Banc Denied July 13, 1978.

Philip L. Goar, Los Angeles, Cal., for petitioner-appellant.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for respondent-appellee.

Before CARTER, GOODWIN and WALLACE, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Joseph Baur represents a class of residents of public alcoholic treatment centers in Los Angeles County, California, who are seeking reinstatement of Supplemental Security Income benefits to them under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The Secretary of H.E.W. discontinued their benefits because they were found by an administrative law judge to be inmates of a public institution who are ineligible for supplemental income payments under 42 U.S.C. § 1382(e)(1)(A). The District Court for the Central District of California affirmed the findings of the administrative law judge. On appeal Baur contends: (1) his classification as an "inmate" under 42 U.S.C. § 1382(e)(1)(A) is not authorized by the act, and (2) even if properly classified as an inmate, he qualifies for the regulatory exception for residents of a public vocational training institution under 20 C.F.R. § 416.231(b)(3). We agree with the district court that the agency's interpretation and application of the statute is correct and AFFIRM.

## I. FACTS.

Appellants are residents of the public alcoholic treatment centers in Los Angeles County, California, known as Antelope Valley Rehabilitation Centers (AVRC or the Centers). AVRC is a state-licensed facility owned and operated by the county of Los Angeles. The Centers provide non-intensive in-patient medical care and mental

health rehabilitation services to disabled indigent men. Over three fourths of the Centers' patients are suffering from some aspect of alcoholism. Residency at AVRC is voluntary.

Prior to January 1, 1974, appellants received state public assistance payments under the old state-federal categorical aid programs pursuant to Titles I and XIV of the Social Security Act (Old Age Assistance and Aid to the Totally Disabled). However, effective January 1, 1974, Title XVI of the Social Security Act, § 1601 *et seq.*, 42 U.S.C. § 1381 *et seq.*, repealed the old programs and created a comprehensive new federal program of income assistance to the needy aged, blind and disabled. The new program is known as the Supplemental Security Income program (SSI).

When SSI replaced, *inter alia*, former Titles I and XIV of the Social Security Act, appellants initially were converted to the SSI rolls through the "grandfathering" provision of the new law. *See* Social Security Act, § 1611(g), 42 U.S.C. § 1382(g). But around March 5, 1978, the Social Security Administration notified appellants that their SSI payments were to be terminated under § 1611(e)(1)(A) of the Act, 42 U.S.C. § 1382(e)(1)(A), because they were inmates of a public institution which did not receive payments under Title XIX of the Social Security Act (Grants to States for Medical Assistance Programs).

Appellants pursued their administrative remedies to a hearing at which an administrative law judge held them to be ineligible for SSI payments under § 1611(e)(1)(A). He found specifically that appellants are inmates of a public institution; that they are not excluded from the inmate category by the vocational training institution exception contained in the regulations, 20 C.F.R. § 416.231(b)(3); and that AVRC does not receive Title XIX funds on behalf of appellants, making them ineligible also for that exception to the inmate exclusion.

A final administrative review by the Appeals Council of the Bureau of Hearings and Appeals sustained the administrative law judge's ruling. This became the final decision of the Secretary of H.E.W.

Appeal was taken to the United States District Court for the Central District of California. On April 26, 1976, that court made extensive findings of fact and conclusions of law and affirmed the decision of the Secretary.

## II. SCOPE OF § 1611(e)(1)(A).

Section 1611(e)(1)(A) of the Social Security Act, 42 U.S.C. § 1382(e)(1)(A) provides:

> "Except as provided in subparagraph (B), no person shall be an eligible individual or eligible spouse for purposes of this subchapter with respect to any month if throughout such month he is an inmate of a public institution." [1]

The Secretary has clarified this provision in 20 C.F.R. § 416.231(b):

> "(1) An 'institution' is an establishment which furnishes (in single or multiple facilities) food and shelter to four or more persons unrelated to the proprietor and, in addition, provides some treatment or services which meet some need beyond the basic provision of food and shelter.

---

1. Subparagraph (B) permits payment of specified benefits to inmates of public institutions who would otherwise be eligible, if their institution is a hospital, extended care facility, nursing home, or intermediate care facility receiving payments under a state plan approved under subchapter XIX of the Act. Appellants contended before the agency that since AVRC is part of the integrated Los Angeles County health program which does receive Title XIX benefits for part of its services, AVRC qualifies as an institution receiving such benefits. This argument was rejected by the agency and has not been renewed on appeal.

Nor would this argument be successful on appeal. Subparagraph (B) specifically requires a qualifying institution to be a "hospital, extended care facility, nursing home, or intermediate care facility" and AVRC is none of these. Moreover, AVRC does not directly receive Title XIX funds for the services it renders. The other institutions in the county system which receive Title XIX funds receive them for only the services rendered in their facilities, not for services rendered in other county facilities.

"(2) A 'public institution' is an institution that is the responsibility of a governmental unit, or over which a governmental unit exercises administrative control.

"(3) An 'inmate of a public institution' is a person who is living in a public institution and receiving treatment and/or services which are appropriate to the person's requirements. A person is not considered an inmate when he is in a public educational or vocational training institution for the purposes of securing educational or vocational training."

Appellants contest the Secretary's interpretation of § 1611(e)(1)(A) because it makes no distinction between custodial and noncustodial inmates of public institutions. They contend the term "inmates" as used in the act can only be construed to refer to "one who is confined in a custodial institution under some form of restraint." The Secretary's contrary interpretation is claimed to be unauthorized (1) because it is in conflict with the common and ordinary usage of the term "inmate"; (2) because it frustrates the policy of the SSI program; and (3) because it is internally inconsistent with another provision of the program, 42 U.S.C. § 1382(e)(3), which requires persons who are alcoholics to undergo treatment appropriate for their condition to become eligible for SSI benefits.

■ First, appellants contend "inmates" is commonly understood to refer to persons in custody under some kind of restraint. They cite the only example of the inmate exclusion provided in the legislative history of the SSI program: "No assistance benefits will be paid to an individual in a penal institution." H.R.Rep. 92–231, 92d Congress, 1st Session, 1972 U.S.Code, Congressional & Administrative News p. 5136. And they note that their interpretation comports with a dictionary definition of "inmates" to be "one of a family, community, or other group occupying a single dwelling home or other place of residence. *esp[ecially]*: a person confined or kept in an institution (as an asylum, prison, or poor house)." *Webster's Third New International Dictionary* 1165 (1968) (emphasis in original).

Admittedly one of the contemporary specialized usages of "inmate" refers to persons held in some kind of institutional confinement under restraint. However, as the dictionary definition above illustrates, the more general meaning of the word refers to any persons occupying a stated dwelling. Other dictionaries confirm this general and ordinary usage of the term. *See, e. g., The Shorter Oxford English Dictionary* 1076 (3rd ed. 1973) ("1. One who dwells with others in the same house (now rare) . . 2. In relation to the house: an occupant along with others; hence, *occas.,* = Indweller, Inhabitant, Occupier."); *Black's Law Dictionary* 926 (Revised 4th ed. 1968) ("A person who lodges or dwells in the same house with another, occupying different rooms, but using the same door for passing in and out of the house."); *Bouvier's Law Dictionary* 1582 (Rawle's 3rd Revision, 8th ed. 1914) ("One who dwells in a part of another's house, the latter dwelling at the same time in the said house."). The Secretary correctly construed the term "inmate" to encompass noncustodial occupancy of institutions as well as custodial occupancy.[2]

---

**2.** The only case law discovered interpreting the term "inmate" involves early constructions of insurance forms which inquired of applicants whether they ever had been inmates of specified institutions. Though dated and not directly on point these cases can be helpful by way of analogy. Typical is *Farrell v. Security Life Insurance Company*, 125 F. 684, 688 (2 Cir. 1903). There the relevant insurance form inquired of applicants whether they had "ever been an inmate at any Infirmary, Sanitarium, Institution, Assylum or Hospital?" Farrell responded, "No." In fact, prior to filling out the insurance form he had voluntarily received treatment for rheumatism in a hospital for one to two weeks on advice of his physician. Upon the insured's death the insurance company refused to pay because the insured had allegedly lied on his insurance application. Construing the term "inmate" the court ruled:

" 'Inmate' is defined as follows:
'One who lives in the same house or apartment with another; a fellow lodger; esp. one of the occupants of an asylum, hospital, or prison; by extension, one who occupies or lodges in any place or dwelling.' Webster.
'One who is a mate or associate in the occupancy of a place; hence, an indweller;

Second, appellants contend the Secretary's interpretation will frustrate the legislative intent of Congress in creating the SSI program. According to appellants the primary purpose of the SSI program is to shift the cost of public welfare from local government to the federal government. However, this contention does not find support in the legislative history of the act. Undoubtedly the new federal program was intended to make uniform the eligibility requirements and the benefits under the federal supplemental social insurance programs. The federal government has assumed a major portion of the responsibility of providing for those whose earnings fall below specified levels. Yet Congress did not determine to displace the existing state programs for assisting the needy aged, blind and disabled. Considerations of economic efficiency as well as respect for the state's traditionally local responsibility to care for its citizens seemed to motivate the exception from benefits of persons already receiving treatment at state or local institutions.

Reporting on the bill to Congress, the House Ways and Means Committee proclaimed one of the purposes of the act to be to provide an "efficient and economical method of providing this assistance." H.R. Rep. 92–231, 92d Congress, 1st Session, 1972 U.S.Code, Congressional & Administrative News p. 5133. The same House Report elaborated:

"Your committee believes that the new program financed as it would be from general revenues and with the benefits based on need, *should pay people only to the extent that their needs are not met from other sources*, including, *among others*, social security payments, payments by other agencies, and payments from private pension plans." *Id.* at 5135–36. (Emphasis added.)

In the process of implementing these purposes, the Secretary of H.E.W., in the preamble to the newly promulgated regulations, stated:

"Most of the substantive comments concerning Subpart B were by individuals expressing reservations with respect to the limitation on eligibility due to institutional status. Specifically, they were concerned that no supplemental security income payments would be made to inmates of public institutions. Thus, the State and local government entities are precluded from considering the availability of supplemental security income funds when determining how to meet the cost of care of such aged, blind, and disabled inmates in public institutions. However, the legislative language in Title XVI is specific with respect to public institutions and reflects congressional intent to prevent the shift of public institutional programs which are traditionally the responsibility of the State and local governments, to the Federal Government." 39 Fed.Reg. 8155 (1974).

The administrative agency clothed with responsibility for implementing congressional pronouncements is generally well acquainted with the policy of the statute it administers. This is particularly true when the agency has long been involved in the construction and administration of a given statute or its predecessors. Where, as here, the agency has extensive experience, has relied on the common meaning of the relevant statute's specific language, and can point to important congressional purposes furthered by its interpretation, only a clear showing of a contrary intent by Congress will justify overruling the agency's regulations.

Appellants respond that if noncustodial inmates of public institutions are properly covered by the exclusion from benefits in

an associated lodger or inhabitant; as the inmate of a dwelling house, factory, hospital, or prison.' Century.

There is nothing to show that the word 'inmate' was used or understood in said application in any sense other than its ordinary sense as thus defined. The presumption

therefore is against any different or technical use." *Id.* at 688.

*See also: Farmers & Traders Life Ins. Co. v. Dalheim*, 175 Misc. 145, 24 N.Y.S.2d 89, 91 (1940) (Phrase "inmate of any hospital or sanitarium" uses the term in its ordinary sense to refer to "a patient going to a hospital".).

§ 1611(e)(1)(A), it can only be because the needs of such inmates are being met by that institution free of charge. This arguably comports best with the stated purpose of the act to provide benefits to the needy "only to the extent that their needs are not met from other sources." *See* H.R.Rep. 92–231, quoted *supra*; U.S.Code Cong. & Admin.News 1972, p. 5136. Thus they urge that the implementing regulation, wherein it defines an institution to be an establishment which "furnishes food and shelter . . . and . . . provides some treatment or services", should be construed to require that the food, shelter and services be provided without cost to the inmate. Assertedly under this approach appellants would not be subject to exclusion from SSI payments because under California law they or their relatives can be required to pay for the services rendered at AVRC unless they are unable to pay. The Secretary contends that even if AVRC residents are obligated to pay for their own care they still fall squarely within the literal statutory exclusion of "inmates of a public institution" and must be denied benefits.

This contention by appellants is an invitation to read into the statutory language of § 1611(e)(1)(A) implicit limitations on the scope of its otherwise unrestricted language. We agree with the Secretary, however, that the residents of AVRC fall literally within the exclusion from benefits in the section and on that basis alone can be denied SSI payments. The statute is specific, unambiguous and all-inclusive. It excludes from benefits all "inmates of public institutions" without regard to the basis on which the institutions provide their services. That Congress intended the breadth of the language in this exclusion is evident from the fact that in § 1611(e)(1)(B) it provided for a *single, express* exception for certain

kinds of institutions receiving Title XIX payments. Had further limitations been intended they would have been expressly provided.

■ Third, appellants contend their exclusion from SSI payments is inconsistent with the Act's stated purpose of providing SSI benefits to persons undergoing treatment for alcoholism. Section 1611(e)(3) of the Act, 42 U.S.C. § 1382(e)(3), requires any drug addicts or alcoholics to undergo treatment appropriate for their condition to be eligible for SSI benefits.[3] In the ordinary case it was contemplated that such persons would receive SSI benefits as soon as they began treatment. The committee report states:

> "Your committee believes that those people who are disabled, in whole or in part, as a result of the use of drugs or alcohol should not be entitled to benefits under this program unless they undergo appropriate, available treatment in an approved facility, and the bill so provides. Your committee, while recognizing that the use of drugs or alcohol may indeed cause disabling conditions, believes that when the condition is susceptible to treatment, appropriate treatment at Government expense is an essential part of the rehabilitation process of people so disabled." H.R.Rep. 92–231, 1972 U.S.Code, Congressional and Administrative News p. 5135.

From this appellants argue that they are being denied benefits under § 1611(e)(1)(A) for engaging in the very treatment required by § 1611(e)(3). But appellants seek to extract too much from § 1611(e)(3). That section does not guarantee SSI benefits to all drug addicts and alcoholics if they consent to undergo treatment for their illness. Rather, it sets up one additional con-

---

**3.** "No person who is an aged, blind or disabled individual solely by reason of disability (as determined under section 1382c(a)(3) of this title) shall be an eligible individual or eligible spouse for purposes of this subchapter with respect to any month if such individual is medically determined to be a drug addict or an alcoholic unless such individual is undergoing any treatment that may be appropriate for his condition as a

drug addict or alcoholic (as the case may be) at an institution or facility approved for purposes of this paragraph by the Secretary (so long as treatment is available) and demonstrates that he is complying with the terms, conditions, and requirements of such treatment and with requirements imposed by the Secretary under subparagraph (B)." 42 U.S.C. § 1382(e)(3)(A).

dition to their receipt of such payments. It is not an override of the prior statutory exclusion of inmates of public institutions. It is an independent provision intended to assure that persons disabled because of drug addiction or alcoholism, whether or not they are inmates of a public institution, cannot utilize public funds to perpetuate their addiction.[4]

### III. THE VOCATIONAL TRAINING INSTITUTION EXCEPTION.

In its definition of "inmate of a public institution" 20 C.F.R. § 416.231(b)(3) provides:

"A person is not considered an inmate when he is in a public educational or vocational training institution, for the purposes of securing education or vocational training."

Appellants' final contention is that even if they are otherwise found to be inmates at AVRC for purposes of the statute, they qualify for this regulatory exception. AVRC, as an integral part of its rehabilitation program, attempts to prepare its patients to cope with the stresses of life outside the institution, including the stress involved in the daily routine associated with employment. Accordingly, evidence was submitted which showed that patients at AVRC receive work assignments and supervision to facilitate their rehabilitation.

The administrative law judge concluded that to qualify for the vocational training exception an institution's "primary purpose" must be the training of persons in job skills." He ruled that the primary purpose of treatment at AVRC is not training in job skills, stating, "Rather than training, the work activity [at AVRC] may be described and has been described as occupational therapy."

Appellants concede in their brief that the primary purpose of AVRC is not vocational training. In the words of the Centers' director, the purpose of the center is "to alleviate suffering and to restore the physi-

cal, mental and social health of people suffering from disabling illness and disability." However, appellants contend that the "primary purpose" standard applied by the administrative law judge is inconsistent with the act, because it frustrates the congressional intent that disabled individuals return to gainful employment as soon as possible.

Certainly Congress must have intended that disabled individuals return to work when possible, but this does not necessitate the creation of an exception to the inmate exclusion for every disabled person who can show that he or she receives some work experience as part of a rehabilitation program. The Secretary promulgated this exception and his delineation of its scope is to be afforded deference unless it manifestly frustrates the purpose of the act. The "primary purpose" test used by the Secretary is not in conflict with the purposes of the Act.

Furthermore, our review of this factual finding is limited to a determination whether there is substantial evidence in the record as a whole to support the findings of the administrative law judge. In this regard it is evident that the determination that AVRC is not a vocational training institution is amply supported. Appellants concede that vocational training is only a secondary aspect of their program. The actual work experiences at AVRC are limited to support services required to operate the centers. The director of AVRC himself explained:

"The emphasis is more upon the establishment of patterns of regular work attendance and performance, and the acceptance of responsibility and supervision than it is upon specific vocational training, though the latter is available to some extent." R. 67–68.

A holding that AVRC is a vocational training institution would ignore the apparent fact that the Centers operate not to train

---

4. The parties have stipulated to the fact that there are facilities in Los Angeles which treat alcoholics on an out-patient basis.

individuals with new skills to enable them to enter the job market, but to develop physical, psychological and social health in its patients.

The judgment of the district court is AFFIRMED.

GOODWIN, Circuit Judge, concurring and dissenting:

I agree with the majority that Congress did not intend SSI to replace state support for inmates of state institutions. I do not agree, however, that Congress intended to deny SSI to persons otherwise eligible in state institutions when they or their families were legally liable to the state for their support. When the person's estate or family is billed for his support, the state does not "furnish" it within the meaning of 20 C.F.R. § 416.231(b)(1). Rather, the state has simply acted as a conduit for support the estate or family has furnished. Such a person does not meet the definition of an inmate of an institution, and therefore remains eligible for SSI benefits to the extent of his estate's or family's liability.

I would remand the case to the district court, with instructions to grant relief to any AVRC resident who can show that the state is holding him or his family legally liable for his support.