**Myrtle I. LEVINGS, Appellant,**

v.

**Joseph CALIFANO, Jr., Secy., HEW, Appellee.**

**No. 79–1100.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1979.

Decided Aug. 29, 1979.

Anne Kahn Silverstein, Legal Services of Eastern Missouri, Inc., St. Louis, Mo., for appellant; Kathleen O'Blennis, St. Louis, Mo., on brief.

Ann Travis, Asst. U.S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U.S. Atty., and Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., Paul P. Cacioppo, Reg. Atty., Region VII, and D. Samuel Borin, Atty., Dept. of HEW, Kansas City, Mo., on brief.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Myrtle I. Levings appeals from the district court's order of summary judgment in favor of the Secretary of Health, Education and Welfare (Secretary).[1] Ms. Levings brought this action, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (1976), for judicial review of the Secretary's final decision terminating her supplemental security income (SSI) benefits. The district court determined, by adoption of the recommendation of the United States Magistrate, that Ms. Levings was "an inmate of a public institution" within the meaning of 42 U.S.C.

§ 1382(e)(1)(A) and, therefore, was not entitled to SSI benefits.

On appeal Ms. Levings contends that the district court erred in finding that the nursing home at which she resided constituted a "public institution" and in finding that Ms. Levings was "an inmate" of such "public institution." We agree in part with Ms. Levings' contentions and reverse the decision of the district court.

On September 26, 1974, Myrtle Levings entered the Monroe Manor Nursing Home (Monroe Manor), a health care facility in Paris, Missouri. Monroe Manor is operated by the Monroe Manor Nursing Home District, organized as a "political subdivision of the state," under Missouri Law. Mo.Rev. Stat. § 198.200 (1969). The Nursing Home District is authorized to establish and maintain Monroe Manor as a nursing home. Mo. Rev.Stat. § 198.300. The District does not, however, possess the authority to admit or maintain indigents at the nursing home without charge. During her residence at Monroe Manor, Ms. Levings paid for all charges she incurred.

Ms. Levings began receiving SSI benefits pursuant to 42 U.S.C. § 1381a in January 1974.[2] In April 1975, Ms. Levings reported to the Social Security Administration (SSA) that she resided at Monroe Manor. On November 4, 1975, the SSA notified Ms. Levings of her ineligibility for SSI benefits because the agency deemed Monroe Manor a "public institution" within the meaning of 42 U.S.C. § 1382(e)(1)(A).

On November 7, 1975, Ms. Levings moved to the Pleasant View Nursing Home, a privately operated facility. She received SSI benefits while residing at that facility. On December 30, 1975, Ms. Levings reentered Monroe Manor and has remained there since that date.

The SSA notified Ms. Levings on March 30, 1976, that her benefits would be termi-

---

1. The court denied Ms. Levings' motion for summary judgment.

2. 42 U.S.C. § 1381a provides:
   Every aged, blind, or disabled individual who is determined under part A to be eligible on the basis of his income and resources shall, in accordance with and subject to the provisions of this subchapter, be paid benefits by the Secretary of Health, Education, and Welfare.

nated because she lived in a public institution. The decision to terminate Ms. Levings' SSI benefits was upheld first on reconsideration, then by an administrative law judge, and finally by the SSA Appeals Council. The Appeals Council decision constitutes a final decision of the Secretary from which Ms. Levings timely brought this action for review.

The district court referred the case to a United States Magistrate and, thereafter, adopted the magistrate's recommendation that the Secretary's motion for summary judgment be sustained on the ground that Ms. Levings was an inmate of a public institution when she lived at Monroe Manor and, as such, was not entitled to SSI benefits.

42 U.S.C. § 1382(e)(1)(A) provides:

Except as provided in subparagraph (B), no person shall be an eligible individual * * * for purposes of this subchapter with respect to any month if throughout such month he is an inmate of a public institution.

Although section 1382(e)(1)(A) does not define the phrase "inmate of a public institution," the Secretary, in its regulations, construes the phrase in the following manner:

(1) An "institution" is an establishment which furnishes (in single or multiple facilities) food and shelter to four or more persons unrelated to the proprietor and, in addition, provides some treatment or services which meet some need beyond the basic provision of food and shelter.

(2) A "public institution" is an institution that is the responsibility of a governmental unit, or over which a governmental unit exercises administrative control.

(3) An "inmate of a public institution" is a person who is living in a public institution and receiving treatment and/or services which are appropriate to the person's requirements. A person is not considered an inmate when he is in a public educational or vocational training institution, for purposes of securing education or vocational training,

[20 C.F.R. § 416.231(b)(1)–(3) (1978).]

We agree with the district court's determination that Monroe Manor, the nursing home at which Ms. Levings resided, is a public institution. However, because we believe the usage of "inmate" suggests a relationship different than the relationship between Ms. Levings and Monroe Manor, we hold that Ms. Levings is not "an inmate of a public institution" within the meaning of section 1382(e)(1)(A).

■ Absent a specific statutory definition, words used in a statute should be given their common meaning. *See Banks v. Chicago Grain Trimmers Assn.*, 390 U.S. 459, 465, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); *Sheehan v. Scott*, 520 F.2d 825, 829 (7th Cir. 1975). Ordinarily, the term "inmate" is understood to refer to persons confined in institutions under some form of restraint, not to persons who reside at facilities on a purely voluntary basis.[3]

In addition, the Secretary's regulations state that a person who lives in a public institution and who "receives" treatment and care constitutes an inmate of such public institution. 20 C.F.R. § 416.231(b)(3). The regulation indicates that persons residing in facilities that provide appropriate treatment and services, regardless of such person's ability to pay for their care, are inmates. Here, however, Ms. Levings pays the going rate for all services rendered to her at Monroe Manor, and neither the institution nor the state would under any circumstances assume the cost of services provided Ms. Levings or any other resident of the nursing home. Thus, Ms. Levings *purchases* her treatment requirements, rather than "receiv[es]" treatment and/or services

---

**3.** Indeed, the only example of the "inmate" exclusion appearing in the legislative history of the SSI program states that "[n]o assistance benefits will be paid to an individual *in a penal institution.*" H.R. Rep. No. 92–231, 92d Cong., 1st Sess. ——, reprinted in [1972] U.S. Code Cong. & Admin.News, pp. 4989, 5136 (emphasis added). It is difficult to perceive any similarity between this use of "inmate" in the legislative history and Ms. Levings' circumstances in this case.

**594**

within the meaning of the Secretary's regulations.[4]

 In sum, because Ms. Levings resides voluntarily at Monroe Manor and pays for any services the nursing home provides, she does not meet the definition of an inmate of a public institution and remains eligible for SSI benefits.[5]

Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

---

**4.** This case may be distinguished on its facts from *Baur v. Mathews,* 578 F.2d 228 (9th Cir. 1978). In *Baur,* the petitioner resided at a public institution, an alcoholic treatment center, where public funds would cover the cost of services if the individual were unable to pay for the services provided. Here, to the contrary, the nursing home will not provide care or maintenance to indigents at public expense.

In any event, we disagree with the discussion in *Baur, supra,* 578 F.2d at 234, which broadly

construes "inmate" in 42 U.S.C. § 1382(e)(1)(A), as including any person residing at any public institution, whether custodial or noncustodial, without regard to the basis on which the institution may provide services.

**5.** On this appeal, neither party contends that the state benefits which Ms. Levings receives in any way affects her eligibility for SSI benefits.