DEPARTMENT OF HEALTH & HUMAN SERVICES, State of Washington, individually and as real party in interest and custodian, and on behalf of; Daniel Belknap; Mark Blanton; Katrina Crawford; Dwight Hammond; Stephen Lopez; Adam Mcgrew; Brian Reece; Derrick Simpson, and other similarly-

---

situated juvenile offenders denied SSI because they reside in group homes; Shawn M. Hankins; Roger A. Lemieux, Plaintiffs–Appellants,

v.

Shirley S. CHATER, Commissioner, Social Security Administration, Defendant–Appellee.

No. 96–36259.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1998.

Decided Dec. 22, 1998.

Michele Besso, Assistant Attorney General, Olympia, Washington, for the plaintiffs-appellants.

Matthew Collette, United States Department of Justice, Washington, D.C., for the defendant-appellee.

Before: DAVID R. THOMPSON, A. WALLACE TASHIMA, Circuit Judges, and TOM STAGG, District Judge *

STAGG, District Judge:

The Commissioner of Social Security Administration denied applications for disability benefits submitted by children residing in group homes for juvenile rehabilitation. The Washington State Department of Social and Health Services appealed denials on behalf of disabled children who reside in: (1) privately owned and operated group homes and (2) publicly operated group homes serving sixteen or fewer residents. A Social Security Administrative Law Judge upheld the denial of benefits. The Department of Social and Health Services filed suit in district court, and cross motions for summary judgment were filed by the parties. The district court granted the Commissioner of Social Security Administration's motion for summary judgment and dismissed the case, upholding the Administrative Law Judge's determination. We affirm.

* Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana,

## I. BACKGROUND

### A. Facts.

Juvenile offenders are children under the age of 18 who have been found by a juvenile court to have committed acts which would be violations or crimes if committed by an adult. *See* Wash. Rev.Code § 13.40.020(14), (15), & (20). When a term of confinement of more than 30 days is imposed upon the juvenile as a result of his offense, the juvenile is placed under the supervision of the Washington State Department of Social and Health Services ("DSHS"). *See* Wash. Rev.Code § 13.40.185. Once referred to DSHS, juvenile offenders are committed to one of five state-operated institutions, three of which are maximum security and two of which are medium security. After this initial confinement, DSHS may choose to move juvenile offenders to other facilities, including group homes. The group homes may be owned and operated by DSHS or may be privately owned and operated group homes with which DSHS contracts. *See* Wash. Rev.Code § 13.40.020(9). Juveniles residing in group homes may participate in "work, educational, community service, or treatment programs in the community up to twelve hours a day." Wash. Rev.Code § 13.40.205(10).

Privately owned group homes manage their own operation and budget, hire and manage their own staff, and determine their own curriculum, programs and activities to be offered to the juveniles. However, the contract between DSHS and each private facility incorporates a "Statement of Work," in which DSHS imposes numerous requirements. The facility must operate in accordance with DSHS policies and may not release a juvenile without state approval. The contract requires the facility to "[p]rovide a culturally relevant program that adheres to all applicable DJR [Division of Juvenile Rehabilitation] bulletins, DSHS policies including compliance with policies governing employee conduct, Community Residential Placement Standards, and the DJR Case Reporting System." Excerpts of Record 100. Additionally, the contract imposes specific

sitting by designation.

requirements on the operation of the contracting facility, including minimum standards for personnel, staff scheduling, escape procedures, incidents which require immediate reporting to DSHS. The contract also mandates maintenance of a permanent log detailing individual and group behavior, program activities and security checks, incidents which require parental notification, requirements for health care services, and creation of a written policy to maintain adequate custody of the offenders. Finally, the contract dictates that the Division of Juvenile Rehabilitation shall provide to the facilities "training in DJR policies, procedures and case reporting requirements" and "current applicable DJR bulletins, Case Reporting System Manual, CRP [Community Residential Placement] Standards, and DSHS policies." Excerpts of Record 104. DSHS also imposes numerous requirements upon the private facilities "[t]o ensure public safety" and "[t]o maintain a system that monitors residents' whereabouts." Excerpts of Record 100. Each facility must monitor alcohol and drug abuse, take steps to prevent escapes, and notify DSHS immediately of group escapes or escapes of certain types of residents.

When juvenile offenders are placed by DSHS in privately owned group homes, the offenders remain under the custody and control of the State and may be relocated only by order of DSHS. A juvenile who has been sentenced to a term of confinement under the supervision of DSHS may "not be released from physical custody of the department" prior to his or her release date, except under limited circumstances. Wash. Rev. Code § 13.40.205(1).

**B. Procedural History.**

Fifty-five residents of juvenile group homes in Washington applied for and were denied supplemental security income ("SSI") benefits by the Social Security Administration. DSHS requested a consolidated hearing on behalf of those fifty-five residents,

seeking a ruling that juvenile offenders under its custody and care are entitled to receive SSI benefits.[1] During the time periods for which they sought benefits, each of the juvenile claimants was incarcerated either in (1) a privately owned and operated group home that incarcerates juvenile offenders under contract with the State of Washington or (2) a publicly operated group home of sixteen or fewer residents. The Social Security Administration's Administrative Law Judge ("ALJ") consolidated the cases and certified a class of similarly situated juvenile offenders. On March 4, 1995, the ALJ upheld the Social Security Administration Commissioner's denial of benefits. The ALJ found that the claimants are "inmates of a public institution" and therefore, pursuant to 42 U.S.C. § 1382(e)(1)(A),[2] ineligible to receive SSI benefits. In reaching this conclusion, the ALJ noted that juvenile offenders remain under the custody and control of DSHS at all times and that DSHS exercises substantial control over the operation of the private facilities. The ALJ further determined that public and private group homes that serve fewer than sixteen residents are not "publicly operated community residences," whose residents would otherwise be entitled to benefits pursuant to an exception for publicly operated community residences. In reaching this conclusion, the ALJ relied upon 20 C.F.R. § 416.211(c)(5)(iii), which excludes detention facilities from the definition of "publicly operated community residences," holding that the regulation is consistent with the Social Security Act. The Appeals Council of the Social Security Administration denied a request for review on September 9, 1995, finding that "[t]he decision of the Administrative Law Judge is supported by substantial evidence and is in accord with the law and its implementing regulations." Excerpts of Record 27.

On January 12, 1996, DSHS filed a petition for review and complaint for declaratory and

---

1. If a juvenile offender receives federal SSI benefits, Washington law allows DSHS, as custodian of the funds, to use the money to offset the cost of care otherwise paid by the state. *See* Wash. Rev.Code § 74.13.060. The State pays for the needs of juvenile offenders, although an amendment to the Juvenile Justice Act allows the State to seek reimbursement from an offender's parent

or legal guardian. *See* Wash. Rev.Code § 13.40.220.

2. This section provides, in pertinent part, that "no person shall be an eligible individual ... with respect to any month if throughout such month he is an inmate of a public institution."

injunctive relief in district court on behalf of itself and 10 juvenile offenders, challenging the ALJ's upholding of the denial of benefits. Specifically, DSHS argued that the ALJ erred as a matter of law in holding that juvenile offenders incarcerated in privately operated group homes under contract with the state are "inmates of a public institution" and are, therefore, ineligible for SSI benefits. DSHS further argued that 20 C.F.R. § 416.211(c)(5)(iii), the regulation excluding detention facilities from the definition of "publicly operated community residence," is invalid as beyond the scope of the Commissioner's statutory authority, and that the ALJ, therefore, erred in relying on the regulation and in denying benefits to those incarcerated in publicly operated group homes serving fewer than 16 residents. On cross-motions for summary judgment, the district court rejected DSHS's arguments and held that the Commissioner and the ALJ properly denied benefits to the juvenile offenders. The district court found that the ALJ's decisions, interpreting the Commissioner's regulations, are entitled to deference and that DSHS's claims are better addressed to Congress.

## II. ANALYSIS

### A. Standard Of Review.

■ The grant of summary judgment is reviewed *de novo*. *See Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). However, we must give substantial deference to an agency's interpretation of its own regulations because its expertise makes it well-suited to interpret the language. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 2386–87, 129 L.Ed.2d 405 (1994).

### B. The Commissioner's Decision Regarding Privately Operated Group Homes Is Entitled To Deference.

In 1972, Congress enacted the SSI program to provide assistance "to individuals who have attained age 65 or are blind or disabled" by providing cash subsistence payments to indigent persons who have a disability expected to last more than twelve months. 42 U.S.C. § 1381. The SSI program contains two purposes-the first is the government's goal to provide a minimally decent standard of living to destitute, blind, aged and disabled individuals, and the second is the government's need to prevent the dissipation of its resources through neglect, abuse, or fraud. *See Martin v. Sullivan*, 932 F.2d 1273, 1278 (9th Cir.1990) (citing *Lyon v. Bowen*, 802 F.2d 794, 797 (5th Cir.1986)). Title 20, Code of Federal Regulations, section 416.110 explains the objective of the SSI program as follows:

> The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level....

The Social Security Act directs the Commissioner of the Social Security Administration to provide benefits to all individuals who meet the eligibility criteria. *See* 42 U.S.C. § 1381a. Although the SSI program "is broad in its reach, its coverage is not complete." *Schweiker v. Wilson*, 450 U.S. 221, 224, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981). Subject to certain exceptions, the Act does not provide benefits to an otherwise eligible person "with respect to any month if throughout such month he is an inmate of a public institution." 42 U.S.C. § 1382(e)(1)(A).

Congress vested authority to promulgate rules and regulations implementing the SSI program in the Commissioner of the Social Security Administration. *See* 42 U.S.C. § 405(a). Pursuant to that authority, the Commissioner promulgated a regulation defining a "public institution" as:

> an institution that is operated or controlled by the Federal government, a State, or a political subdivision of a State such as a city or a county. The term "public institution" does not include a publicly operated community residence which serves 16 or fewer residents.

20 C.F.R. § 416.201. The Commissioner relied on this regulation in denying benefits to juveniles living in privately owned group homes, finding that the institutions were sufficiently controlled by the state and, thus, qualified as public institutions.

■ In *Thomas Jefferson Univ.*, the Supreme Court stated:

[W]e must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.

512 U.S. at 512, 114 S.Ct. at 2387 (quotations and citations omitted). An agency's interpretation must be deferred to "unless an alternative reading is compelled by the regulation's plain language or by other indications of the [Commissioner's] intent at the time of the regulation's promulgation." *Id.* This deference is warranted all the more when "the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entails the exercise of judgment grounded in policy concerns." *Id.*

■ DSHS argues that the Commissioner's determination that the private facilities are "controlled" by the state is not entitled to deference because it is inconsistent with both past interpretation and interpretations applied to other facilities.[3] To support this argument, DSHS refers the court to classifications given to private group homes that care for mentally ill residents, foster children, developmentally disabled persons, and the elderly.[4] DSHS argues that these homes must also meet state standards and contract requirements, but are still considered private institutions.[5]

The private group homes at issue appoint their own directors, control their own finances, hire and fire their own employees, and develop their own treatment programs according to their own ideas regarding care. The relationship between the state and the privately owned group homes is contractual. Nevertheless, the contract provides very detailed regulations and requirements for the private facilities, resulting in a more involved relationship. As the ALJ correctly found, the extent of these requirements "go beyond a mere contract for services" and establish extensive DSHS control over the privately operated facilities. Furthermore, the control over the juveniles in the group homes serves a punitive purpose, as opposed to the non-

3. DSHS also disputes the Commissioner's reference to the "jail-like" quality of the group homes, arguing that the voluntary nature of the group home does not offer a valid basis for determining that the homes are "public institutions." The group homes do not have locks or physical barriers to prevent a resident from leaving. However, it must be noted that the youths' participation and residency in the homes is not voluntary.

4. DSHS also refers the court to the Programs Operation Manual System ("POMS"), formerly called the "Claims Manual," which is "the Social Security Administration's authorized means for issuing written program instructions for adjudicating claims and performing its mission." *Briggs v. Sullivan (Briggs I)*, 886 F.2d 1132, 1135 (9th Cir.1989) (internal quotations and citations omitted). The POMS provides that an institution is public if it is operated by or under the direct or indirect administrative control of a government entity. The POMS defines direct control as requiring state responsibility for "the ongoing daily activities of an institution; *e.g.*, when the institution's staff members are government employees." Indirect administrative control exists when the state has "total control of all fiscal decisions." DSHS does not have direct or indirect control according to the definitions provided in the POMS. Therefore, according to the POMS regulations at the time the agency denied benefits in

this case, the private facilities fail to qualify as "public institutions."

The Commissioner counters this conclusion, asserting that an examination of the POMS reveals consistent interpretations of the statute precluding an award of SSI benefits to juvenile offenders in the custody of a state, even if those offenders are housed in a private facility. Both the 1983 and 1990 versions of the POMS manual expressly stated that an individual who is placed in a correctional facility is not eligible for benefits and that "[i]neligibility continues if the individual is an inpatient or resident in another institution (whether for all or part of the month), if the correctional or holding facility retains jurisdiction and control over the individual." Both manuals continued by stating that transfer by an agency with jurisdiction over the prisoner "does not make the individual eligible, even if placed in a halfway house which is a private institution." *Id.* Therefore, the Commissioner's decision to deny benefits was not inconsistent with prior interpretations and does not cause us to afford the regulation any less deference.

5. The same private group home may accept both foster children and juvenile offenders. This results in the anomaly of the institution being classified as private as to some of the children and public as to others.

penal purpose behind the institutions where mentally ill residents, foster children, developmentally disabled persons, and the elderly reside.[6]

"From its very inception, the [SSI] program has excluded from eligibility anyone who is an 'inmate of a public institution.'" *Schweiker v. Wilson,* 450 U.S. 221, 224, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981). Congress did not define "public institution," but instead left the term for the Commissioner to interpret. The Commissioner has determined that a public institution includes an institution that is, *inter alia,* controlled by the government. *See* 20 C.F.R. § 416.201. We have recognized that Congress took into account concerns for "economic efficiency as well as respect for the state's traditionally local responsibility to care for its citizens" when it adopted the public institution exemption.[7] *Baur v. Mathews,* 578 F.2d 228, 233 (9th Cir.1978). Accordingly, the public institution exemption "reflects congressional intent to prevent the shift of public institutional programs which are traditionally the responsibility of the State and local governments, to the Federal Government." *Id.* (quoting 39 Fed.Reg. 8155 (1974)).

■ Deference is also afforded to an agency's construction of its own regulation because its expertise makes it well-suited to interpret its own language. The interpretation by the Commissioner conforms with the purpose and wording of the regulation and is a reasonable construction of the regulatory language and, therefore, should be upheld. *See Vallejo Gen. Hosp. v. Bowen,* 851 F.2d 229, 231 (9th Cir.1988). The question is not whether the interpretation represents the best reading of the statute, but whether it represents a reasonable one. Regardless of

whether or not we believe the Commissioner's interpretation is the most effective, we must recognize that the Commissioner has advanced a reasonable explanation for those conclusions. As the regulation is entitled to deference, and because the Commissioner's interpretation is not an unreasonable one, the decision of the district court must be affirmed.

## C. The Commissioner's Decision Regarding Public Group Homes Is Entitled To Deference.

■ Next, DSHS argues that children in state-operated group homes that serve 16 or fewer residents are entitled to SSI benefits. As mentioned *supra,* disabled people living in public institutions are generally ineligible for SSI benefits. *See* 42 U.S.C. § 1382(e)(1)(A). However, Congress created an exception for publicly operated community residences in a 1976 amendment to the Social Security Act, which provides in pertinent part: "[T]he term 'public institution' does not include a publicly operated community residence which serves no more than 16 residents." 42 U.S.C. § 1382(e)(1)(C). The Commissioner's regulations implementing this provision carve out various exceptions to the classes of facilities that can qualify as small community residences. Specifically excluded from the definition of community residences are any facilities

> where the personal freedom of anyone who lives there is restricted because that person is a prisoner, is being held under court order, or is being held until the charges against that person are disposed of

20 C.F.R. § 416.211(c)(5)(iii). Based on this regulation, the Commissioner denied the applications for SSI benefits of children resid-

---

6. In 1979, the Eighth Circuit found that a woman residing voluntarily in a publicly operated nursing home was not an "inmate" of a public institution because she resided there voluntarily. *See Levings v. Califano,* 604 F.2d 591 (8th Cir. 1979). It should be noted that the Commissioner's regulations were amended in 1982 in part to clarify that whether an individual's residence is voluntary is irrelevant in determining whether the person is an "inmate of a public institution."

7. In denying eligibility to the juveniles in this case, the ALJ also referred to the legislative his-

tory of the Social Security Act, finding that Congress had not intended to pay SSI benefits to individuals to the extent that their needs were already being met from other sources. The state maintains legal custody and control over the juveniles at issue, even if the juveniles are placed in private facilities. As the states have traditionally assumed responsibility for those who break state or local law, the Commissioner suggests that Congress intended that the SSI program not be used to shift this financial burden to the federal government.

ing in small, state-operated group homes. DSHS, however, asserts that the regulation promulgated by the Commissioner conflicts with Congress's mandate to provide benefits to those who meet the statutory requirements. Moreover, DSHS argues that the regulation exceeds the Commissioner's statutory authority and should be set aside.

Congress provided in 42 U.S.C. § 1381a that every aged, blind or disabled individual who is eligible shall be paid benefits by the Commissioner. DSHS, therefore, argues that Congress has made clear its intent to withhold any discretionary authority on the part of the Commissioner to restrict eligibility beyond the provided for provisions. However, when the Commissioner issued the regulations implementing this provision, the decision to disqualify correctional facilities from the benefits of the provision was based on the fact that correctional facilities are not "designed to provide the desired living arrangement envisioned by the statute." 43 Fed.Reg. 55379, 55380. Furthermore, in dismissing DSHS's challenge to the validity of the regulation at issue, 20 C.F.R. § 416.211(c)(5)(iii), the ALJ referred to one of the legislative purposes of the Social Security Act and its regulations: "[t]o disallow benefits to those residing in a penal institution whose care and custody are provided for by State and/or local governments." It was not unreasonable for the Commissioner and the ALJ to rely on the intent behind the original SSI legislation to determine that benefits should not be afforded to those in penal institutions. The legislative history reveals that Congress intended the public institution exception to be applied narrowly to benefit the mentally retarded and other individuals who may need emergency housing assistance. No mention was made of altering the original prohibition against providing benefits to individuals in penal institutions. "[A]n exception to a general statement of policy is sensibly read narrowly in order to preserve the primary operation of the [policy]." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731, 115 S.Ct. 1776, 1780, 131 L.Ed.2d 801 (1995) (citations and quotations omitted).

The regulation promulgated by the Commissioner excluding detention facilities is "reasonably related to the purposes of the statute it seeks to implement." *Vierra v. Rubin,* 915 F.2d 1372, 1376 (9th Cir.1990) (quotations and citations omitted). The Commissioner's exclusionary regulation was rational, given Congress' intent that individuals in penal institutions not receive SSI benefits. The regulation is consistent with both the language and the purpose of the statute.

### III. CONCLUSION

The Commissioner's interpretations (1) that private group homes qualify as "public institutions" and (2) that detention facilities are excepted from receiving the benefits provided to publicly operated community residences which serve no more than sixteen residents are not unreasonable and, therefore, are entitled to deference.

**AFFIRMED.**