Eugene LYON, Plaintiff-Appellant,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.

No. 85–3694.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1986.

Mark A. Moreau, New Orleans Legal Assistance Corp., New Orleans, La., Johnny Nixon, Kansas City, Mo., Gill Deford, Nat. Senior Citizens Law Center, Los Angeles, Cal., for plaintiff-appellant.

Mack Davis, Office of General Counsel, Baltimore, Md., John P. Volz, U.S. Atty., Nancy A. Nungesser, Asst. U.S. Atty., New Orleans, La., Karen J. Behner, Dept. of H.H.S., Dallas, Tex., for defendant-appellee.

Before GARWOOD and HILL, Circuit Judges, and WILL*, Senior District Judge.

ROBERT MADDEN HILL, Circuit Judge:

Eugene Lyon, a disabled social security recipient, challenges a regulation of the Secretary of Health and Human Services (the Secretary), 20 C.F.R. § 416.1123(b) (1986), which deems withheld social security disability benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401–433, as income for purposes of calculating Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–1383c. Finding that the challenged regulation, viewed in the context of the entire Social Security regulatory scheme, is not inconsistent with the Act and is appropriate to carrying out its provisions, we affirm the district court and uphold the regulation as a lawful exercise of the Secretary's authority.

### I. Factual Background

Lyon was diagnosed in 1963 as suffering from disabling mental impairments and since then has been eligible to receive social security disability benefits under Title II of the Act. Between December 1974 and March 1979 Lyon received an overpayment of $11,886.70 in Title II benefits as a result of failing to report his income from employment to the Social Security Administration (SSA). After discovering this unreported income, the SSA notified Lyon that it would recoup the overpayment by administratively withholding 100% of his monthly social security Title II disability benefits until the overpayment had been fully recovered.[1]

On October 19, 1981, Lyon requested a waiver of the overpayment pursuant to 42 U.S.C. § 404(b), relief which was denied because he failed to prove that he was not at fault.[2] In addition to the relief provided

---

* Senior District Judge of the Northern District of Illinois, sitting by designation.

1. Such withholding is authorized by 42 U.S.C. § 404(a).

2. Section 404(b) provides:

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this

in section 404(b), the Secretary has set forth in 20 C.F.R. § 404.502(c) (1986) a means by which individuals not entitled to waiver may reduce withholding to as little as ten dollars per month. Lyon, who as we have already noted was mentally impaired, apparently did not have sufficient familiarity with the regulations to grasp the distinction between waiver and reduction and thus did not file a separate application for section 404.502(c) relief. And, notwithstanding that requirements of proof for a reduction of withholding are less stringent than those for waiver, the SSA declined to construe Lyon's application for waiver liberally so as to make this relief available to him. As a result, between 1983 and 1985, Lyon (who had been found eligible for SSI benefits), by reason of the withholding of Title II benefits and the counting of these benefits as income for the purpose of calculating his SSI benefit level, actually received less than 60% of the amount which the SSI program guarantees recipients for basic subsistence.[3]

Lyon's request for waiver was denied by a final decision of the Secretary on November 20, 1984. Thereafter, Lyon filed suit in the district court requesting declaratory and injunctive relief from the policy of the Secretary embodied in 20 C.F.R. § 416.-1123(b) which diminished SSI benefits by counting withheld social security disability benefits as income. The district court upheld the Secretary's policy and this timely appeal ensued.

## II. Statutory and Regulatory Setting

The SSI program was added to the Social Security Act by the Social Security Amendments of 1972, P.L. 92–603, 42 U.S.C. §§ 1381–1383c, effective January 1, 1974. SSI, like the social security disability program, is administered by the SSA. SSI and social security are, however, separate pro-

grams, each operating pursuant to a different statutory authority and receiving funding from separate sources.[4] Congress and the Supreme Court have described the basic purpose of the SSI program as follows:

> This program was intended "[t]o assist those who cannot work because of age, blindness, or disability" by "set[ting] a Federal guaranteed minimum income level for aged, blind, and disabled persons...." The SSI program provides a subsistence allowance, under federal standards, to the Nation's needy, aged, blind, and disabled.

*Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981) (quoting legislative history; footnotes omitted). In short, SSI is a welfare program of last resort designed to provide only a "subsistence allowance."

To be eligible for SSI an individual must be aged, blind, or disabled as defined in 42 U.S.C. § 1382c and have income and resources below the levels specified in 42 U.S.C. § 1382a. The issue posed by the parties is whether or not the Secretary's policy of counting withheld social security payments as "income" as provided for in 20 C.F.R. § 416.1123(b) conflicts with 42 U.S.C. § 1382a which defines income for SSI purposes. Section 1382a(a)(2) provides:

(a) For purposes of this subchapter, income means both earned income and unearned income; and—

. . . . .

(2) Unearned income means all other income, including—

(A) support and maintenance furnished in cash or kind....;

(B) any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation

---

subchapter or would be against equity and good conscience.

**3.** After Lyon filed suit in the district court, the SSA notified his attorney that it would treat his application for waiver of overpayment as an application to reduce withholding pursuant to 20 C.F.R. § 404.502(c). After Lyon produced current information regarding his financial con-

dition the SSA reduced the rate of recovery of the overpayment from $152 to $10 monthly.

**4.** The social security disability program is funded by employees and employers' FICA contributions. SSI is funded by general revenues collected through personal, corporate, and other taxes.

and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefit, railroad retirement annuities and pensions, and unemployment insurance benefits;

(C) prizes and awards;

(D) he proceeds of any life insurance policy to the extent that they exceed the amount expended for purposes of the insured's last illness and burial or $1500, whichever is less;

(E) gifts (cash or otherwise), support and alimony payments, and inheritances; and

(F) rents, dividends, interest, and royalties.

In interpreting this statutory provision, the Secretary's predecessor promulgated regulations which recognized that eligibility for SSI could be based only on income which the applicant actually possessed: "In determining the amount of unearned income the amount actually available to the individual is considered." 20 C.F.R. § 416.-1120 (1977). In 1979 this interpretation was reaffirmed when the Secretary proposed new rules premised on the notion that income is "anything an individual receives in cash or in kind that can be used to meet his or her needs for food, clothing, and shelter." 44 Fed.Reg. 6430 (Feb. 1, 1979). In keeping with this principle, 20 C.F.R. § 416.1123(a) (1979) entitled "How we count unearned income" was added to the Code of Federal Regulations and provided in pertinent part that "[w]e count unearned income when you actually receive it or when it is first available to you or set aside so you can use it at any time." *Id.* at 6433.

Under this approach, Title II benefits withheld to recoup an overpayment of Title II benefits could not count as income for SSI purposes. Any withholding which reduced a recipient's benefits below the minimum subsistence allowance established under Title XVI was "refunded" to the recipient through the SSI program. To this extent, then, the Title XVI SSI program was repaying the recipient's indebtedness to the Title II social security disability program.

In April 1982 the Secretary promulgated 20 C.F.R. § 416.1123 (1986) which was designed to bridge the flow of SSI benefits to an overpaid recipient of Title II benefits. This regulation, which is the subject of this action, provides in pertinent part:

(b) We may include more or less of your unearned income than you actually receive. (1) We include more than you actually receive where another benefit payment ... has been reduced to recover a previous overpayment.

The Secretary argues that this regulation is defensible on the theory that recipients whose benefits have been withheld to repay a debt to the social security trust "constructively" receive the withheld payments. According to the Secretary, the "amount withheld from the Social Security disability benefit to recover the disability benefit overpayment is 'available' to the plaintiff in the sense that it provides actual benefit to him in the form of extinguishing part of an outstanding debt."

The government's point is well taken: In the lexicon of legal fiction "withheld" sometimes means "received" or "available." We see no need for resort to verbal distortions of this order, however, because we do not believe that the Secretary's method of withholding need be justified as a pure welfare measure. There are two Congressional purposes at the heart of the Title II and Title XVI programs. First is the government's apparent aim to provide a minimally decent standard of living to destitute, blind, aged, and disabled individuals. Second is the government's need to prevent the dissipation of its resources through neglect, abuse, or fraud. We take the position that "income" may be defined in a way that accommodates both of these aims. Thus, while availability for expenditure on food and shelter is the essential characteristic of "income" where no overpayment has taken place, this requirement may be dispensed with when the recipient has violated the terms governing his eligibility for disability benefits.

### III. Analysis

Essentially, there are three objections to the Secretary's construction of section 1382a. We discuss them in the order presented.

### A.

■ First is that the language of the statute itself precludes counting withheld benefits as income. Section 1382a(a)(2)(B) (which we have examined above) provides that

(2) unearned income means all other income, including—

.  .  .  .  .

(B) any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits.

Both parties have placed a great deal of stock in the word "received," hence the government's efforts to characterize the withheld Title II benefits as received benefits. We observe, however, that the word "received" is used only in subsection (a)(2)(B) and not in subsections (a)(2)(A) [support or maintenance], (a)(2)(C) [prizes and awards], (a)(2)(D) [life insurance], (a)(2)(E) [gifts, support and alimony payments and inheritances], or (a)(2)(F) [rents, dividends, interest and royalties].

Had Congress intended to impose a condition of receipt on subsection (a)(2)(B) payments, we believe it would have imposed such a requirement in the other subsections as well. The absence of any mention of receipt in other subsections leads us to believe that the term "received" imposes no special conditions on disability insurance benefits and serves merely as a grammatical link between "payments" and the descriptive list of benefits which follows. The Secretary's predecessors, apparently sharing our view, devised no special regulations for subsection (a)(2)(B) income, creating instead an "availability" standard applicable to all income. This standard, insofar as it is uniformly applicable, appears not to originate from the word "received" (located only in subsection (a)(2)(B)) but rather from the policies underlying a basic needs welfare program. We conclude, therefore, that to the extent the program's welfare aims are overborne by conflicting policies relating to the program's management, so too may the statutory definition of "income" reflect a compromise of these competing values.

### B.

■ The question we must next answer is which of the two competing aims, the maintenance of the aged and disabled or the enforcement of program regulations, is to prevail. Noting that violations of our criminal laws are never punished by starvation or exposure, at first blush it would be reasonable to infer that the former, not the latter, aim should be our guiding principle. We find clear evidence in 42 U.S.C. § 1383(b), however, that this is not the case. Title 42 U.S.C. § 1383(b) empowers the Secretary to recover SSI overpayments by adjusting and reducing future SSI payments. It provides:

(b)(1) Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall, subject to the succeeding provisions of this subsection, be made by appropriate adjustments in future payments to such individual or by recovery from or payment to such individual or his eligible spouse (or by recovery from the estate of either). The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity or good con-

science, or (because of the small amount involved) impede efficient or effective administration of this subchapter.

Thus Congress clearly intended that overpayment of SSI payments be waived only where the recipient was without fault; otherwise an adjustment in future benefits or recovery from the recipient is mandated. Because SSI is a welfare program of last resort and guarantees only subsistence level benefits, it follows that any recovery of a prior SSI overpayment from future SSI payments will necessarily reduce the recipient's benefits to an amount beneath the federally-established floor. Section 1382, then, establishes that Congress' preeminent concern is maintaining the integrity of the SSI program rather than guaranteeing a minimum level of support to aged, blind, or otherwise disabled citizens.[5]

### C.

■ The final consideration militating against the Secretary's treatment of Lyon's withheld benefits as "income" is that such treatment is identical in result, if not in form, to a cross-program recovery of Title II benefits. The Secretary could have achieved the same result had she calculated Lyon's SSI entitlements on the basis of Title II benefits actually received and then withheld from Lyon's SSI benefits the amount subject to recoupment.

Although two courts have found that Titles II and XVI forbid cross-program recoveries of social security and SSI benefits, *Ellender v. Schweiker*, 575 F.Supp. 590 (S.D.N.Y.1983); *McDaniels v. Heckler*, 571 F.Supp. 880 (D.Md.1983), *aff'd*, 732 F.2d 150 (4th Cir.1984), we do not believe that the resemblance which the Secretary's method of recovery bears to a cross-program recovery is cause for reversal.

*Ellender* and *McDaniels*, both cases which found that the Secretary was not empowered to collect SSI overpayments from Title II benefits, rested their holdings on the language of 42 U.S.C. § 407:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

and on 42 U.S.C. § 1383(d)(1) which incorporates section 407 in Title XVI.[6] Without expressing any opinion on the correctness of the *Ellender* and *McDaniels* holdings with respect to true cross-program recoveries, we find that sections 407 and 1383 do not forbid the calculation of SSI benefits in the manner undertaken by the Secretary in this case.

Section 407(b) requires that statutes which authorize "execution, levy, attachment, garnishment, or other legal process" in derogation of section 407(a) will not be given effect unless they explicitly refer to that section. In 1984, just one year after the enactment of section 407(b), Congress reexamined and amended 42 U.S.C. § 1320a–6, a statute whose legislative history reveals that it was designed "to provide that an individual's entitlement under [Titles II and XVI] shall be considered as a totality so that payment under either pro-

---

**5.** The balance struck between these two unequal interests does not dictate all or nothing results. 20 C.F.R. § 404.502(c) (*see* n. 3 *supra*), while requiring withholding in cases where the recipient was at fault, permits the Secretary to withhold less than the total amount of benefits due in cases of hardship.

**6.** The *McDaniels* court also relies on 20 C.F.R. § 416.570 (1986), promulgated on October 10, 1975, which provides that "no overpayment made under Title II or Title XVIII of this Act shall be adjusted against supplemental security income benefits...."

gram shall be deemed to be a payment under the other if that is subsequently found to be appropriate." Significantly, this 1984 amendment makes no mention of section 407.

Section 1320a–6 does not apply to the facts of this case. It provides that when an individual's Title II payments are delayed (thereby triggering an increase in the individual's Title XVI payments for that month), the overpayment of SSI benefits may be deducted from subsequent back payments of the delayed Title II benefits. What is relevant about section 1320a–6 for our purposes is that, like 20 C.F.R. § 416.-1123(b), it does not authorize cross-program recovery *per se* but achieves the same results by permitting an integrated method of accounting.

The absence of any reference to section 407 in amended section 1320a–6 is, of course, not dispositive as to whether the unified approach to calculating SSI and Title II entitlements authorized by that section entails an "execution, levy, attachment, garnishment, or other legal process" which is prohibited by section 407(a). Nevertheless, it is clear that Congress had section 407(b) well in mind in 1984 when it amended section 1320a–6; for, in that year it also amended 26 U.S.C. § 6334 (authorizing the government to levy on a tax debtor's income and property) to provide that "[n]otwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." Pub.L. 98–369, Title VI, § 2661(o)(5), 98 Stat. 1159 (July 18, 1984) as codified at 26 U.S.C. § 6334(c). Moreover, the inference that section 407's prohibition against cross-program recoveries was not intended to prohibit the integrated accounting method envisioned in section 1320a–6 is bolstered by the unique relation which the SSI program bears to the social security disability program. Congress' clear purpose in establishing the SSI program was not to guarantee a certain quantum of SSI benefits but, rather, to guarantee that an individual who has complied with applicable regulations will receive SSI and social security benefits whose total will provide him minimally adequate support.

For these reasons, we do not believe that section 407 applies to the method of accounting authorized in section 1320a–6. And, by extension of this reasoning, we conclude that section 407 raises no bar to 20 C.F.R. § 416.1123(b) which, for accounting purposes, views SSI and social security disability as integrated programs.

## IV. Our Caveat

Although we conclude that the Secretary has authority to count withheld Title II payments as "income" under 42 U.S.C. § 1382a, we express our concern over the treatment Lyon received during the pendency of his application for waiver of overpayment. Our conclusion that the Secretary's interpretation of the income provisions of section 1382a do not conflict with the Act has been developed with an eye to the entire statutory and regulatory scheme governing the SSI and social security disability programs. In our view, a crucial component of these interlocking provisions is 20 C.F.R. § 404.502(c) (1986) which affords an individual such as Lyon the right to petition for reduction of withholding. With the limited exception of 42 U.S.C. § 1320a–6, the Act does not address the accounting methods to be employed in calculating combined Title II and Title XVI benefits. In resolving the uncertainty created by this gap in statutory law we are called upon to balance the competing aims and purposes of SSI and social security disability programs. We have concluded that a balance which permits *some* reduction of the minimum benefits provided to SSI recipients strikes the appropriate balance. Our conclusion might well be different, however, were the harsh effects of the challenged regulation not softened by the remedies afforded by section 404.502(c).

At present, Lyon is receiving the relief afforded by § 404.502(c) and only $10 of his

monthly title II check is being withheld. A difference of $10 between what is actually received and what is "constructively" received under § 416.1123(b) need not concern us. However, if a greater portion were being withheld—one hundred percent, for example—there would be greater concern that counting the benefits as being "received" under § 1382a(a)(2) of the Act is arbitrary and unreasonable. In such a case, the method employed by the Secretary might offend title XVI's purpose of providing a minimum level of subsistence benefits for disabled persons.

For two years, one hundred percent of Lyon's title II benefits were withheld. As a result, Lyon received considerably less in SSI benefits than the amount the Secretary considered necessary for minimal subsistence. Nevertheless, in the circumstances of this case, we need not decide whether the Secretary's policy was arbitrary or unreasonable. The record shows that although Lyon had been notified of his right to seek relief from undue hardship caused by the withholding, Lyon never requested such relief. As an SSA official stated, Lyon "never contacted the Social Security Administration to discuss hardship in regard to the rate of recovery of the Social Security overpayment or to request that the Social Security Administration withhold a lower amount from his Social Security disability benefit check to recover the overpayment." Affidavit of Harris G. Factor, Director, Office of Regulations, SSA. Once this action was commenced, the SSA acted promptly to reduce Lyon's rate of repayment. While one should not be required to bring a lawsuit to obtain such relief, there is no indication that Lyon could not have obtained it by simply filing a proper request in the first instance.

With this caveat, then, we affirm the judgment of the district court which upholds 20 C.F.R. § 416.1123(b) and denies Lyon the injunctive and declaratory relief he seeks.

AFFIRMED.