Shirley WOODS, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civ. A. No. 92–3137 (SSB).

United States District Court,
D. New Jersey.

April 26, 1995.

Glendon G. Bell, Woodbury, NJ, for plaintiff.

Faith Hochberg, U.S. Atty. by Anthony Labruna, Jr., Asst. U.S. Atty., U.S. Atty. Office, Newark, NJ, for defendant.

1. Plaintiff's original application form, completed on October 14, 1987, appeared to have been altered, to reflect that she had no resources. A check-mark in the "yes" block was erased and "no" was checked instead. Testimony by Plain-

BROTMAN, District Judge:

The present case is before the court on appeal from the decision of the Secretary of Health and Human Services ("Secretary") to discontinue Plaintiff's Supplemental Security Benefits and to collect an overpayment which resulted from Plaintiff's ownership of excess resources. For the reasons set forth below, this court affirms the Secretary's decision.

## I. BACKGROUND

The Plaintiff, Shirley Woods ("Plaintiff"), applied for Supplemental Security Income ("SSI") benefits on October 14, 1987. She qualified for benefits as a result of combined disabilities including visual problems caused by glaucoma, borderline intelligence and a generalized anxiety disorder.

In December of 1989, upon field contact from the Social Security Administration ("SSA"), the Plaintiff informed the agency that she owned three life insurance policies [1] with a total cash value of $5,415.01, and two annuities with cash values totalling $13,-179.25. Once Plaintiff disclosed the existence of the life insurance policies and the annuities, SSA determined that the resources available to Plaintiff from these policies and annuities exceeded the resource levels permitted by the SSI program. SSA subsequently discontinued benefits in March of 1990, and processed a non-fraudulent overpayment, which relieved the Plaintiff of liability for causing the overpayment, but still required repayment of the money received during the period of ineligibility.

Upon reconsideration, SSA upheld the overpayment and the decision to terminate benefits due to excess resources. Plaintiff appealed and a hearing was held before an Administrative Law Judge ("ALJ"), on August 28, 1990. The ALJ held that the cash surrender values of the life insurance policies and the annuities exceeded the regulatory limits for the SSI program, as set by 20 C.F.R. §§ 416.1201(a), 416.1230(a).

tiff at the hearing held by the Administrative Law Judge, indicated that she had not completed the form herself, but that it had been completed in the district office, by an employee of the agency.

The ALJ's decision was upheld by the Secretary on appeal. Accordingly, the ALJ's opinion stands as the final decision of the Secretary.

## II. DISCUSSION

### A. Standard of Proof

■ Pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3), this court's role in reviewing the decision of the Secretary is to determine whether the record, as a whole, contains substantial evidence to support the Secretary's findings. "Substantial evidence" has been defined as that evidence which "a reasonable mind might accept as adequate to support a conclusion". *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Where evidence is susceptible to more than one interpretation, the court must give deference to the agency interpretation unless it is arbitrary and capricious or an abuse of the agency's discretion. *Fishburn v. Gardner*, 452 F.2d 1004, 1005 (3d Cir.1971).

### B. Plaintiff's Resources

#### 1. Life Insurance Policies

There is no question that the resources Plaintiff was entitled to from her insurance policies exceeded the resource limitations established by the SSI program. 42 U.S.C.A. § 1382b(a), provides that the cash surrender value of insurance policies must be considered as a resource unless the total face value of all policies is $1,500.00 or less. According to her testimony, Plaintiff possessed insurance policies having a total face value of $20,000 when she initially applied and qualified for benefits. Plaintiff's testimony indicated that she had taken out these policies in 1968 with the money she received from her

husband's death benefits. May 1, 1991 Hearing Tr. p. 4.

The effective resource limitation for cash and liquid assets was $1,800 during 1987; $1,900 during 1988; and $2,000 after 1989. *See* 20 C.F.R. § 416.1205(c). Life insurance policies are defined as liquid resources by 20 C.F.R. § 416.1201(b) [2] because they can easily be converted into cash within the prescribed period of twenty (20) working days.[3] In December of 1989, when Plaintiff first reported these policies to the agency, the cash surrender value of her policies was $5,415.01. *See* SSA Exhibit B–11. This value exceeded the resource limitations in effect for 1989. Based on the cash surrender value of the policies in 1989, it is reasonable to conclude that the cash surrender value of the policies exceeded the 1987 and 1988 limitations on resources as well.

■ Plaintiff argues that she was not given time to dispose of the resources. However, under the provisions of 20 C.F.R. § 416.1240(a)(2), Plaintiff could either agree in writing to dispose of her excess resources and repay any overpayment, or otherwise her resources would be considered as available for her support and maintenance, and would result in making Plaintiff ineligible for benefits. Payments made for the period during which resources are being disposed are conditioned upon the resources actually being disposed of in the manner prescribed by 20 C.F.R. § 416.1240(c). Furthermore 20 C.F.R. § 416.1240(c) concludes that failure to dispose of the resources as prescribed in § 416.1240(a)(2), regardless of the claimant's efforts, results in the resources being counted at their then current market value, and the claimant's ineligibility due to possession of the excess resources. Extended time periods for conversion of resources apply to nonliquid resources. However, as stated above, 20 C.F.R. § 416.1201(b) [4] defines the cash

---

**2.** "Examples of resources that are ordinarily liquid are stocks, bonds, mutual fund shares, promissory notes, mortgages, life insurance policies, bank accounts ... certificates of deposit and similar items." 20 C.F.R. § 416.1201(b).

**3.** If the resource can be converted into cash within twenty (20) days the money is deemed

available for support and maintenance of the individual.

**4.** 20 C.F.R. § 416.1201(b) states:
"[l]iquid resources are cash or other property which can be converted to cash within 20 days ... Examples of the resources that are ordinarily liquid are stocks, bonds, mutual fund shares, promissory notes, mortgages, life

value of insurance policies as a liquid resource. *See* 20 C.F.R. § 416.1242. Consequently, the Secretary was correct in terminating Plaintiff's benefits when it was discovered that Plaintiff's resources exceeded the limitations established by SSI eligibility provisions.

## 2. Annuities

■ Plaintiff argues that it is unclear whether her two annuities should be considered as a resource or as unearned income. She contends that because the regulations specifically address annuities only under 42 U.S.C.A. § 1382a(a)(2)(B) in the computation of unearned income, the annuities should not be counted as resources. Plaintiff reasons that for an individual to be able to receive monthly payments from an annuity, the face value of the policy is likely to exceed the resource limitations of 20 C.F.R. § 416.1205(c). The court, however, does not find Plaintiff's reasoning compelling. Although 20 C.F.R. § 416.1201 does not specifically list annuities among the examples of liquid and non-liquid resources, it does define a resource as "cash or other liquid assets or any real or personal property that an individual ... owns and could convert to cash to be used for ... support and maintenance." *See* 20 C.F.R. § 416.1201(a). Plaintiff's annuities can be easily converted into cash within seven (7) days according to the policies. *See* SSA Exhibit B–20, at 4.

The inclusion of annuities within the definition of unearned income found in 20 C.F.R. § 416.1121(a) was adequately explained by the ALJ in his decision. He explained that once payments commence, the policy holder can no longer withdraw the cash surrender value of the annuity, hence, the payments would then be counted as unearned income.[5] However the cash surrender value of the annuity should be considered as a resource if the annuity payments have not yet commenced. The principle behind this reasoning is that if the individual has the ability to cash

in the annuity, then that annuity is a resource. However, if periodic payments have begun and the individual can no longer obtain the cash surrender value of the annuity, then the annuity is properly deemed unearned income.

■ The ALJ's reasoning is supported by the Social Security Administration's Programs Operation Manual System ("POMS"). The POMS is published to help clarify the regulations for the Social Security field offices. After defining retirement funds as annuities, POMS goes on to state

"[t]he value of a retirement fund is the amount of money that an individual can currently withdraw from the fund.... [a] retirement fund owned by an eligible individual is a resource if he/she has the option of withdrawing a lump sum even though he/she is not eligible for periodic payments. However, if the individual is eligible for periodic payments, the fund may not be a countable resource ..."

*See* POMS § SI 01120.210B. Although this publication does not carry the force of law, the SSA's interpretation set forth in the POMS is neither arbitrary and capricious nor an abuse of the agency's discretion. Therefore, the court will give deference to the agency's interpretation.

Plaintiff conceded in her brief, that her annuity payments had not commenced, and that the cash value of the annuities was $13,179.25. The policy provides that the net cash value will be paid "within 7 days" after a request for the funds is received. Therefore, the annuities can be quickly converted into cash within the regulation's twenty (20) day period and can be used for Plaintiff's maintenance and support. The cash value of these annuities has exceeded the resource limitations in place since the time that Plaintiff was found disabled in 1987. *See* 20 C.F.R. § 416.1205(c). Consequently, the Secretary's decision to discontinue Plaintiff's benefits because her assets exceeded the resource limi-

---

insurance policies, bank accounts ... certificates of deposit and similar items. Liquid resources, other than cash, are evaluated according to the individual's equity in the resource."

**5.** Upon commencement of annuity payments, the annuity loses its cash surrender value because

the policy is no longer vested. Vesting refers to the policy having full value. When payments commence, the policy ceases to be vested in the investor, and becomes vested in the insurer.

tations was supported by substantial evidence.

### C. Overpayment

■ The final issue before the court is whether the overpayment in SSI benefits to Plaintiff can be waived on grounds that enforcing such repayment ("recovery") would defeat the purpose of the program, or would offend equity and good conscience. The Secretary has determined that Plaintiff, as a result of her limited mental abilities, was without fault in causing the overpayment. However, a "without fault" determination does not relieve Plaintiff of the responsibility to repay the debt. *See* 20 C.F.R. § 416.552. The SSA may waive recovery only where the claimant is "without fault" **and** where (1) recovery would defeat the purpose of Title XVI of the Social Security Act ("the Act"), or (2) repayment would offend equity and good conscience. *See* 20 C.F.R. §§ 416.552, 416.553, 416.554.

### 1. Purpose of Title XVI of the Act

The Legislature enacted Title XVI of the Act to provide a subsistence allowance to aged and disabled individuals who do not have financial coverage under other portions of the Social Security Act or under any other pension plan. In *Lyon v. Bowen,* 802 F.2d 794, 796 (5th Cir.1986), the court described the purpose of the SSI program as "a program of last resort, designed to provide only a 'subsistence allowance.'" It is sometimes referred to as a federal welfare plan for disabled individuals. As such, it provides a monthly minimum amount of support to disabled or aged individuals who either have no other income or who have income on a monthly basis which is below the standard set for SSI.

The regulations instruct that recovery of an overpayment would defeat the purpose of the Act if the individual's own income and resources are needed for ordinary and necessary expenses. *See* 20 C.F.R. § 416.553(a). Ordinary and necessary expenses are defined as fixed living expenses such as food, rent, medical expenses, or support of another. *See* 20 C.F.R. § 404.508(a).[6]

Based on the record, the state of Plaintiff's living arrangements is not clear. At the hearing Plaintiff testified that she lived with her parents. May 1, 1991 Hearing Tr. p. 2. However, a continuing eligibility form completed by Plaintiff on December 7, 1989 indicated that Plaintiff owned the home, that her parents and her brother lived with her, and that no rent was being paid by her parents or brother. On the form, Plaintiff listed her living expenses as $762.01 a year in taxes, $100.00 per week in food, and $125.00 per month in electric. The form also revealed that Plaintiff did not incur any sewer or water costs. However, after listing all of these costs, the interviewer then wrote on Plaintiff's behalf "I contribute $120 per month. My parents still pay the bills." This document was signed by Plaintiff. *See* SSA Exhibit B–5.

Even if the court assumes that the Plaintiff alone paid and continues to pay all the listed bills, a total of $618.50 per month, Plaintiff could easily pay her monthly bills by using the cash surrender values of her insurance policies and annuities. Enforcing the repayment of the $7,866.08 in overpaid benefits would still leave Plaintiff with sufficient resources to support herself for several months before again becoming eligible for SSI payments. Therefore, Plaintiff would not fall within the subsistence standards established for SSI qualification by repaying the overpayment.

The government has a dual objective in maintaining the SSI program. Although the first objective is to provide a decent standard of living for disabled individuals, the second objective is to prevent dissipation of the government's resources through neglect, fraud, or abuse. *Lyon v. Bowen,* 802 F.2d 794, 797 (5th Cir.1986). Even though Plaintiff has not

---

**6.** 20 C.F.R. § 404.508(a) states:

"(a) General. Defeat the purpose of title II, for purposes of this subpart, means defeat the purpose of benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs . . . ."

engaged in any fraudulent conduct, the Secretary has an obligation to attempt to recoup funds which were distributed inappropriately, when, as in the instant case, an individual has the means to repay the money.

## 2. Equity and Good Conscience

█ The second basis upon which the SSA could waive recovery of the overpayment is if repayment would offend equity and good conscience. Equity and good conscience are offended "if an individual changed ... [his/her] position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made...." *See* 20 C.F.R. § 416.554. Plaintiff mistakenly supports her argument by citing example 2 in the regulations. Example 2 states:

> An individual fails to take advantage of a private or organization charity, relying instead on the award of supplemental security income payments to support himself. It was subsequently found that the money was improperly paid. Recovery would be considered **against equity and good conscience.**

*Id.* (emphasis in original). Plaintiff claims to have been denied the opportunity to request private charity funds. However, rather than proclaiming the application for charity benefits to be a right, as Plaintiff argues, this example emphasizes the strength of the Secretary's intent to make SSI benefits the means of last resort.

In example 2, an overpayment of benefits resulted because the charity benefits were available for the claimant's support, even though the claimant did not collect the charity monies. Example 2 indicates that when charity benefits are available, a claimant is not eligible for SSI benefits because he has not exhausted all possible means of support.[7] Although an overpayment resulted in example 2, SSA did not enforce the repayment of SSI benefits because the claimant had not received the charity funds, and as a result, recovery of the overpayment would be against equity and good conscience.

In both example 2 and this case, the funds were available to Plaintiff. The difference between example 2 and Plaintiff's situation is that, rather than depending on charity for support, the funds available to Plaintiff are her own liquid assets, already in her possession, which need only be converted to cash in order to be available to meet her support and maintenance requirements. At the hearing Plaintiff testified that she had taken out the policies and annuities in 1968 upon the death of her husband. She further testified that she has never worked and that she was supported by her parents from 1984, when her Social Security Widows Benefits stopped, until 1987 when her SSI benefits were approved. She lived with her parents before her SSI benefits began, and continued to live with them while receiving such benefits. Although Plaintiff accepted the agency's determination of eligibility and believed that she was entitled to SSI benefits, there is no evidence which indicates that Plaintiff relied upon the receipt of SSI benefits to her detriment.

Upon liquidation of the resources, the net proceeds to the individual are considered available to repay any overpayment. *See* 20 C.F.R. § 416.1244(a). Here, Plaintiff's net proceeds exceed $16,000.00 ($13,179.25 cash value from annuities plus $5,415.01 cash value from insurance policies, minus the $2,000 resource limitation allowed) which is more than sufficient to repay the overpayment. Therefore, the court affirms the Secretary's determination that Plaintiff repay the overpayment in benefits.

## III. CONCLUSION

Plaintiff's insurance policies and annuities are liquid resources which can be converted into cash within twenty (20) working days. Their singular and combined cash values exceed the resource limitations established by the SSI program, and Plaintiff was not entitled to the SSI benefits which she received. An overpayment resulted. Although Plaintiff has been found to be without fault in causing the overpayment, she will be re-

---

**7.** This example should not be used as a basis to deny an individual SSI benefits on the assumption that there is help for that individual from some vague charity. Rather it should apply only when there is specific proof that an individual had applied, but then refused the charity funds in reliance on SSI benefits which were awarded.

quired to reimburse the SSA for the overpayment since she has the means to repay the money without depriving herself of such necessities as food and shelter, and she has not been detrimentally affected by her receipt of SSI benefits. The court affirms the Secretary's determination and an appropriate order will be entered.